**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| PH LODGING TOMBALL, LLC, a Texas Limited Liability Company, *on behalf of itself and a class of similarly situated entities*, | : : : | |
| | : | Case No. 4:21-cv-1803 |
| Plaintiffs, | : | **JURY TRIAL DEMANDED** |
| | : | |
| v. | : | |
| | : | |
| HOLIDAY HOSPITALITY FRANCHISING, LLC, SIX CONTINENTS HOTELS, INC. d/b/a INTERCONTINENTAL HOTELS GROUP and IHG OWNERS ASSOCIATION, INC., | : : : : | |
| | : | |
| Defendants. | : | |

### DEFENDANTS' MOTION TO DISMISS

| | |
|---|---|
| **BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C.** | **PARKER, HUDSON, RAINER & DOBBS, LLP** |
| Bobbie L. Stratton | Ronald T. Coleman, Jr. (*pro hac vice* pending) |
| Texas Bar No. 24051394 | Georgia Bar No. 177655 |
| Fed. I.D. No. 1037350 | rtc@phrd.com |
| bstratton@bakerdonelson.com | Jared C. Miller (*pro hac vice* forthcoming) |
| 1301 McKinney St., Suite 3700 | Georgia Bar No. 142219 |
| Houston, TX 77010 | jcm@phrd.com |
| Telephone: (713) 650-9700 | Anne Horn Baroody (*pro hac vice* pending) |
| | Georgia Bar No. 475569 |
| | abar@phrd.com |
| Katherine I. Funk (*pro hac vice forthcoming*) | 303 Peachtree Street, NE, Suite 3600 |
| kfunk@bakerdonelson.com | Atlanta, Georgia 30308 |
| 901 K Street NW | Telephone: (404) 523-5300 |
| Suite 900 | |
| Washington, DC 20001 | |
| Telephone: (202) 508-3492 | |

*Attorneys for Defendants Holiday Hospitality Franchising, LLC and Six Continents Hotels, Inc.*

## <u>TABLE OF CONTENTS</u>

NATURE AND STAGE OF THE PROCEEDINGS ........................................................x

STATEMENT OF ISSUES ......................................................................................x

INTRODUCTION ...................................................................................................1

SUMMARY OF THE ARGUMENT ..........................................................................3

ARGUMENT .........................................................................................................5

I.     The Complaint should be dismissed because Plaintiff does not allege a proper basis for venue. .......................................................................................................5

II.    Legal standard applicable to motion to dismiss. ..................................................6

III.   Georgia law governs the legal theories that Licensee attempts to assert, except those brought under federal law. ..................................................................................7

IV.   Licensee fails to plead sufficient facts to satisfy the Twombly/Iqbal standard as to any cause of action in the Complaint............................................................................7

V.    Licensee's Count I asserts no viable breach-of-contract claim. ...........................9

     A.    Paragraphs 192(a)-(d), (h)-(i), and (k) fail because the License Agreement expressly authorized IHG to undertake all the activities Licensee complains of. ...9

     B.    Georgia's voluntary payment doctrine bars the breach theories Licensee asserts in Paragraphs 192(a), (b), (c), and (h)........................................................................12

     C.    Licensee's alleged pre-contractual representations cannot support a breach of contract claim as a matter of law. .........................................................................14

VI.   Licensee's Count III fails to meet Article III's case or controversy requirement and substantively fails to state a plausible claim for unconscionability under Georgia law. ...15

     A.    The Court lacks Article III jurisdiction over Licensee's declaratory judgment count because it does not allege a justiciable case or controversy.........................15

          1.    Licensee's generalized dissatisfaction with the License Agreement does not create a concrete dispute between these parties.................................16

          2.    Rewriting the parties' agreement is not a remedy this Court can provide.17

     B.    In any event, Licensee cannot meet the extremely high standard to state a plausible claim of unconscionability under Georgia law.......................................18

1.      Licensee does not plausibly allege procedural unconscionability. ...........19

2.      Licensee also does not plausibly allege substantive unconscionability.....22

VII.    The Court should dismiss Licensee's accounting request because Licensee's substantive theories all fail as a matter of law. ...................................................................26

VIII.   Licensee's allegations do not plausibly allege an unlawful tying arrangement................26

A.      Licensee does not plausibly allege that HHF has market power in the proposed tying market. ...........................................................................................28

1.      Hospitality franchises is not a properly defined antitrust market. ...........28

a)      Licensee fails to define the relevant product market. ...................29

b)      Licensee fails to define the relevant geographic markets. .............30

2.      Licensee's solitary market power allegation is conclusory and insufficient. .................................................................................................31

B.      Licensee's rule of reason claim also fails because the allegations do not plausibly infer that the tying arrangement caused any anticompetitive effects in the tied market. ...........................................................................................................33

C.      Licensee's antitrust claim is barred by the statute of limitations.........................35

CONCLUSION....................................................................................................36

CERTIFICATE OF SERVICE ....................................................................................38

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*A&M Gerber Chiropractic, LLC v. GEICO Gen. Ins. Co.*,
   925 F.3d 1205 (11th Cir. 2019) ................................................................. 15

*Aetna Life Ins. Co. of Hartford v. Hawthorn*,
   300 U.S. 227 (1937) ................................................................................. 18

*Am. Casual Dining, L.P. v. Moe's Sw. Grill, LLC*,
   426 F. Supp. 2d 1356 (N.D. Ga. 2006) ............................................... 14, 15

*America's Favorite Chicken Co. v. Cajun Enters., Inc.*,
   130 F.3d 180 (5th Cir. 1997) ................................................................... 12

*Amey Inc. v. Gulf Abstract & Title, Inc.*,
   758 F.2d 1486 (1985) ............................................................................... 28

*Anderson v. Deutsche Bank Nat. Trust Co.*,
   No. 1:11-cv-4091-TWT-ECS, 2012 WL 3756512 (N.D. Ga. Aug. 6, 2012) ......................... 14

*Apani SW., Inc. v. Coca-Cola Enters., Inc.*,
   300 F.2d  (5th Cir. 2002) ...................................................................... 6, 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 6, 28

*Atlantic Marine Constr. Co. v. United States Dist. Court*,
   571 U.S. 49 (2013) ..................................................................................... 7

*Back Bay Resorts SWF, LLC v. Holiday Hospitality Franchising, LLC*,
   No. 1:14-CV-02521-ELR, 2015 WL 13120060 (N.D. Ga. Nov. 19, 2015) ........................... 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 6

*Brown Shoe Co. v. U.S.*,
   370 U.S. 294 (1962) ................................................................................. 29

*Burda v Wendy's Int'l, Inc.*,
   659 F. Supp. 2d 928 (S.D. Ohio 2009) ............................................... 32, 36

*Burger King Corp. v. Austin*,
   805 F. Supp. 1007 (S.D. Fla. 1992) ......................................................... 12

*Burger King. Corp. v. E-Z Eating, 41 Corp.*,
   572 F.3d 1306 (11th Cir. 2009) ............................................................... 25

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984) ................................................................. 35

*Chawla v. Shell Oil Co.*,
   75 F. Supp. 2d 626 (S.D. Tex. 1999) ...................................................... 35

*Choice Hotels Int'l, Inc. v. Chewl's Hospitality, Inc.*,
   91 F. App'x 810 (4th Cir. 2003) .............................................................. 19

*Clark Memorials of Alabama Inc. v. SCI Alabama Funeral Ser*vices LLC,
   991 F. Supp. 2d 1151 (N.D. Ala. 2014) .................................................. 31

*Cobra Tactical, Inc. v. Payment Alliance Int'l Inc.*,
   315 F. Supp. 3d 1342 (N.D. Ga. 2018) ................................................... 19

*CogniTest Corp. v. Riverside Pub. Co.*,
   107 F.3d 493 (7th Cir. 1997) ................................................................... 22

*Commodore Plaza v. Saul J. Morgan Enters.*,
   746 F.2d 671 (11th Cir. 1984) ................................................................. 28

*Cotton v. Med-Cor Health Info. Sols., Inc.*,
   221 Ga. App. 609 (1996) ................................................................... 13, 14

*Crown Series, LLC v. Holiday Hospitality Franchising, LLC*,
   357 Ga. App. 523 (2020) ......................................................................... 25

*CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Group, Inc.*,
   283 Ga. 426 (2008) .................................................................................... 7

*CTUnify, Inc. v. Nortel Networks, Inc.*,
   115 F. App'x 831 (6th Cir. 2004) ............................................................ 27

*Doctor's Assocs., Inc. v. Jabush*,
   89 F.3d 109 (2d Cir. 1996) ...................................................................... 22

*Douglas v. McNabb Realty Co.*,
   78 Ga. App. 845 (1949) ........................................................................... 14

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*,
   797 F. 3d 1248 (11th Cir. 2015) .............................................................. 28

*E & L Consulting v. Doman Indus.*,
   472 F.3d 23 (2d Cir. 2006) ...................................................................... 28

iv

*Eastman Kodak v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992) ................................................................................................. 31

*Endsley v. City of Chicago*,
    230 F.3d 276 (7th Cir. 2000) .................................................................................... 6

*First Data POS, Inc. v. Willis*,
    273 Ga. 792 (2001) .................................................................................................. 15

*Gas Light Co. v. Aetna Cas. & Sur. Co.*,
    68 F.3d 409 (11th Cir. 1995) .............................................................................. 16, 17

*Generation Companies, LLC v. Holiday Hospitality Franchising, LLC*,
    No. 5:15-CV-220-FL, 2015 WL 7306448 (E.D.N.C. Nov. 19, 2015) ................ 7, 10

*Gordon v. Lewistown Hosp.*,
    423 F.3d 184 (3rd Cir. 2005) .................................................................................. 28

*Gordy Tire Co. v. Bulman*,
    96 Ga. App. 739 (1957) ........................................................................................... 26

*Hall v. Wingate*,
    159 Ga. 630 (1924) .................................................................................................. 19

*Haynsworth v. The Corporation*,
    121 F.3d 956 (5th Cir. 1997) .................................................................................... 7

*Henson v. Columbus Bank & Trust Co.*,
    144 Ga. App. 80 (1977) ........................................................................................... 13

*Holiday Hospitality Franchising, LLC v. J&W Lodging, LLC*,
    No. 1:17-CV-01663-ELR, 2018 WL 11224379 (N.D. Ga. Feb. 8, 2018) .............. 7

*Holiday Hospitality Franchising, LLC v. Morning Star Hotel Victorville 4, LLC*,
    No. 1:12-CV-3809-ODE, 2014 WL 11393569 (N.D. Ga. May 2, 2014) .............. 25

*Huang v. Holiday Inns, Inc.*,
    594 F. Supp. 352 (C.D. Cal. 1984) ................................................................... 12, 25

*Ill. Tool Works, Inc. v. Independent Ink, Inc.*,
    547 U.S. 28 (2006) ............................................................................................. 27, 28

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) .................................................................................... 28

*Jacobs v Tempur-Pedic Int'l, Inc.*,
    626 F.3d 1327 (11th Cir. 2010) ......................................................................... 28, 29

*Jai Sai Baba LLC v. Choice Hotels Int'l Inc.*,
No. 5:20-cv-02823, 2021 WL 1049994 (E.D. Pa. Mar. 19, 2021) ........................................... 21

*Jefferson Parish Hosp. Dist. No. 2 v Hyde*,
466 U.S. 2 (1984) ................................................................................................. 27, 31, 33

*Kuchenmeister v. HealthPort Techs., LLC*,
735 F. App'x 794 (11th Cir. 2018) ........................................................................................ 13

*L & E Corp. v. Days Inns of Am., Inc.*,
992 F.2d 55 (4th Cir. 1993) ............................................................................................. 17, 21

*La Quinta Corp. v. Heartland Props. LLC*,
603 F.3d 327 (6th Cir. 2010) ...................................................................................... 10, 12, 25

*Lawrence v. Dunbar*,
919 F.2d 1525 (11th Cir. 1990) .............................................................................................. 16

*Layton v. AAMCO Transmissions, Inc.*,
717 F. Supp. 368 (D. Md. 1989) ............................................................................................. 25

*Liberty Nat'l Life Ins. Co. v. Radiotherapy of Ga., P.C.*,
252 Ga. App. 543 (2001) ........................................................................................................ 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......................................................................................................... 16, 17

*MacGregor v. Mallinckrodt, Inc.*,
373 F.3d 923 (8th Cir. 2004) .................................................................................................. 21

*Maris Distrib. Co. v. Anheuser-Busch, Inc.*,
302 F.3d 1207 (11th Cir. 2002) .............................................................................................. 29

*McLaughlin Equip. Co. v. Servass*,
No. P98–0127–C–T/K, 2004 WL 1629603 (S.D. Ind. Feb. 18, 2004) ............................... 32, 33

*Michigan Division-Monument Builders of N. Am. v. Michigan Cemetery Ass'n.*,
524 F.3d 726 (6th Cir. 2008) .................................................................................................. 28

*Mullis v. Speight Seed Farms, Inc.*,
234 Ga. App. 27 (1998) .......................................................................................................... 19

*Mumford v. GNC Franchising LLC*,
437 F. Supp. 2d 344 (W.D. Pa. 2006) ........................................................................ 24, 34, 35

*NAFRA Worldwide, LLC v. Home Depot U.S.A., Inc.*,
No. 1:12-cv-2808-AT, 2013 WL 12098772 (N.D. Ga. Aug. 29, 2013) ............................. 19, 20

*NEC Techs., Inc. v. Nelson,*
    267 Ga. 390 (1996)................................................................... 18, 22, 23

*NML Cap. v. Republic of Argentina,*
    621 F.3d 230 (2d Cir. 2010) .................................................................. 19

*Owners Ins. Co. v. Parsons,*
    610 F. App'x 895 (11th Cir. 2015)................................................... 15, 18

*Pai v. DRX Urgent Care, LLC,*
    Nos. 13–4333 (JAP)(TJB), 13–3558(JAP)(LHG), 2014 WL 837158 (D.N.J. Mar. 4, 2014)
    .......................................................................................................... 10, 14

*Pew v. One Buckhead Loop Condo. Ass'n., Inc.,*
    305 Ga. App. 456 (2010)....................................................................... 13

*Philips Elecs. N. Am. Corp. v. BC Tech., Inc.,*
    No. 08-639, 2009 WL 2381333 (D. Utah Aug. 3, 2009) ........................ 31

*Putnam-Greene Fin. Corp. v. AT&T Corp.,*
    No. 3:19-cv-177-TCB, 2020 WL 1915276 (N.D. Ga. Apr. 4, 2020)........................ 13

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
    124 F.3d 430 (3rd Cir. 1997).......................................................... passim

*R.L. Kimsey Cotton Co. v. Ferguson,*
    233 Ga. 962 (1975)........................................................................... 18, 23

*Riehl v. Travelers Ins. Co.,*
    772 F.2d 19 (3d Cir. 1985).................................................................... 16

*Savage v. KGE Assocs. Ltd. P'ship,*
    260 Ga. App. 770 (2003)....................................................................... 15

*Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.,*
    520 F.3d 393 (5th Cir. 2008)................................................................. 24

*Shah v. VHS San Antonio Partners, LLC,*
    985 F.3d 450 (5th Cir. 2021)................................................................... 6

*Sheridan v. Marathon Petroleum Co. LLC,*
    530 F.3d 590 (7th Cir. 2008)................................................................. 32

*Siemer v. Quizno's Franchise Co.*, No. 07 C,
    2170, 2008 WL 904874 (N.D. Ill. Mar. 31, 2008) ................................. 22

*Simon v. World Omni Leasing, Inc.,*
    No. 91-0806-AH-M, 1992 WL 12659375 (S.D. Ala. Jul. 13, 1992) ................... 16, 18

*Singh v. Choice Hotels Int'l, Inc.*,
No. 3:07-CV-0378-D, 2007 WL 2012432 (N.D. Tex. Jul. 11, 2007)....................................... 19

*Spectrum Sports, Inc., v. McQuillan*,
506 U.S. 447 (1993) ................................................................................................................ 33

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ............................................................................................................ 16

*Standard Oil Co. v. United States*,
337 U.S. 293 (1949) ................................................................................................................ 30

*Subsolutions Inc. v Doctor's Assoc. Inc.*,
436 F. Supp. 2d 348 (D. Conn. 2006) ..................................................................................... 34

*Susser v. Carvel Corp.*,
206 F. Supp. 636 (S.D.N.Y. 1962) ................................................................................... 24, 36

*Tiana Corp. v. Principal Comm. Funding, LLC*,
No. 1:14-cv-938-SCJ, 2015 WL 11236552 (N.D. Ga. Mar. 5, 2015)................................ 14, 22

*United Farmers Agents Ass'n v. Farmers Ins. Exch.*,
89 F.3d 233 (5th Cir. 1996)............................................................................................... 27, 32

*Walnut Creek Pipe Distrib., Inc. v. Gates Rubber Co. Sales Div.*,
228 Cal. App. 2d 810 (1964) ................................................................................................... 17

*Watts v. Fla. Int'l Univ.*,
495 F.3d 1289 (11th Cir. 2007)................................................................................................. 6

*Watts v. Promina Gwinnett Health Sys., Inc.*,
242 Ga. App. 377 (2000).......................................................................................................... 13

*We Care Hair Dev., Inc. v. Engen*,
180 F.3d 838 (7th Cir. 1999)............................................................................................. 20, 21

*Westerfield v. Quizno's Franchise Co.*,
527 F. Supp. 2d 840 (E.D. Wis. 2007)........................................................................ 17, 20, 26

*Wilson v. Mobil Oil Corp.*,
984 F. Supp. 450 (E.D. La. 1997) ........................................................................................... 32

*Wingate Inns Int'l v. P.G.S., LLC*,
No. 09-cv-6198 (WHW), 2012 WL 3550764 (D.N.J. Aug. 16, 2012) .................................... 21

**Statutes**

15 U.S.C. § 1 ............................................................................................................................. 35

18 U.S.C. § 1965 ........................................................................................................ 5

28 U.S.C. § 1404(a) ................................................................................................... 2

28 U.S.C. 2201 ........................................................................................................ 15

O.C.G.A. § 13-1-13 ................................................................................................. 13

**Rules**

Fed. R. Evid. 201(b)(2) ........................................................................................... 21

**Regulations**

16 C.F.R. § 426.1 .................................................................................................... 21

## NATURE AND STAGE OF THE PROCEEDING

This case is in its initial stages.  Plaintiff filed its Complaint (Dkt. 1) on June 2, 2021.  By agreement, Defendants' deadline to respond is August 27, 2021.  Accordingly, Defendants file this Motion to Dismiss and, contemporaneously, a Motion to Transfer.

## STATEMENT OF ISSUES

Defendants ask the Court to dismiss this case under Rule 12(b)(6) and provide the standard to apply to this action in Section II herein, as set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 678–79 (2009).

## INTRODUCTION

This case is one of (currently) six virtually identical lawsuits filed by the same plaintiffs' counsel in different federal courts around the country against Defendant Six Continents Hotels, Inc. ("SCH") and its wholly owned subsidiary Holiday Hospitality Franchising, LLC ("HHF," together with SCH, "IHG"). IHG owns, operates, and licenses the operation of multiple hotel brands as part of a national and international hotel system, the majority of which are operated under a franchise model. (Compl. ¶¶ 1-2.) Plaintiff PH Lodging Tomball, LLC ("Licensee") entered into a 20-year License Agreement with HHF to make the hotel it owns part of the Holiday Inn® branded franchise system. In return for the benefits of being part of a national and international hotel franchise system, Licensee agreed that it would "strictly comply" with IHG's System and Standards as defined in the License Agreement, and as they might be modified from time to time, based on what Licensee agreed would be IHG's "wide latitude" and "sole judgment" to make decisions in the best interest of the overall franchise system.

This lawsuit (like the other virtually identical complaints) is a baseless attempt to repudiate and rewrite the contract to which Licensee agreed. Licensee's breach of contract claims fail as a matter of law because the License Agreement expressly authorizes most of the conduct about which Licensee complains. Other courts have repeatedly upheld similar franchise agreement provisions, recognizing that they are necessary and appropriate to ensure the uniform and consistent operation that is the fundamental characteristic of any franchise system. The remainder of the contract claims are barred as a matter of law either by the voluntary payment doctrine under Georgia law (which governs pursuant to the License Agreement) or because they do not identify any provision of the License Agreement alleged to have been breached.

Licensee's claim seeking a declaratory judgment that significant portions of the License Agreement are unconscionable likewise is baseless and should be dismissed. Licensee's claims of

generalized dissatisfaction with the terms of the contract to which it agreed fail to create a justiciable case or controversy, and the requested relief of rewriting the parties' agreement is not a remedy this Court can provide. Moreover, Licensee cannot as a matter of law come close to meeting the high standard under Georgia law to establish that the License Agreement is both procedurally and substantively unconscionable—one that "no sane man not acting under a delusion would make, and that no honest man would take advantage of." Licensee received full disclosure of all relevant terms via a required Franchise Disclosure Document before it signed the contract. And not only did Licensee agree for IHG to have the very rights and discretion to act that it now challenges, such terms are commonplace in and central to the franchise business model, and courts routinely have upheld and enforced contract provisions granting a franchisor discretion to dictate and modify aspects of a franchise system.

Licensee's Sherman Act tying claim against HHF likewise fails to sufficiently allege essential elements and thus must be dismissed. The Complaint fails to define a proper product or geographic market. It contains no allegations to state a plausible claim that HHF has market power, nor could it because all restrictions are the result of the contract and were known and agreed to by Licensee before it signed the License Agreement. In addition, this claim is barred by the Sherman Act's four-year statute of limitations.

In sum, all of Licensees claims[1] fail as a matter of law, and the Complaint should be dismissed without leave to amend.[2]

---

[1] Licensee's Count II for Breach of Fiduciary Duty is not asserted against moving Defendants SCH or HHF, and therefore, is not addressed in this Motion to Dismiss.  Count II was pleaded against another defendant only and has since been withdrawn.  *See* Dkt. 15, 16 (voluntarily dismissing all claims against other defendant).

[2] These Defendants are filing contemporaneously with this Motion a Motion to Transfer this case and all the related cases to the Northern District of Georgia pursuant to the mandatory forum selection clause in the License Agreement and 28 U.S.C. § 1404(a). As stated in that Motion, these Defendants respectfully contend that the transferee court should decide this Motion to Dismiss.

## SUMMARY OF THE ARGUMENT

SCH and HHF are the primary U.S. operating companies of IHG® Hotels & Resorts.[3] Among its many brands, SCH owns the Holiday Inn® family of brands and the Staybridge Suites® brand, among others. (Compl. ¶ 2-3.) HHF offers license agreements to prospective franchisees that choose among other business options to operate utilizing IHG's brands and franchise systems.

Plaintiff PH Lodging Tomball, LLC ("Licensee") is a Texas limited liability company that owns and operates a hotel property in Tomball, Texas. (*Id.* at ¶ 41 and Ex. A, Agreement.) On December 7, 2016, Licensee entered into a License Agreement with HHF to operate Licensee's hotel as a Holiday Inn Express & Suites branded hotel for a term of twenty years. (*Id.* at ¶ 41 and Agreement, § 12(A).) In exchange, Licensee agreed (among other things) to pay royalties and other fees, and to operate the hotel as required by the terms of the Agreement. (Agreement, § 2(B).)

When it entered into the License Agreement, Licensee wholly owned a 3-story (72-room) commercial property that it sought to operate as a Holiday Inn Express & Suites branded hotel. (Attachment A to Agreement.) Licensee acknowledged when it executed the License Agreement that it had independently investigated the advantages and risks of doing business as a Holiday Inn Express & Suites branded hotel, and that it had received and read the disclosures in HHF's Franchise Disclosure Document ("FDD"). (Agreement, § 1.) Licensee acknowledged, furthermore, that it would need to make additional investments into the business over the 20-year term of the license in order to operate a Holiday Inn Express & Suites branded hotel as required by the License Agreement. (*Id.*) The FDD, which is incorporated by reference into the License Agreement, has significant details for what is expected of Licensees. (*See* Declaration of Jenny Tidwell ¶ 10 and Exh. C.)

---

[3]In this brief, SCH and HHF will be referred to collectively as IHG unless it is necessary to refer to one entity specifically.

3

Under the License Agreement, HHF retained ownership of the trademarks associated with the brand (the "Marks") and of the general system for doing business as an IHG-branded hotel (the "System"). (Agreement, § 7.) The License Agreement defines the System to encompass all aspects that identify a hotel as an IHG-branded hotel within the System, including the physical appearance and design of the building and interior, products available to guests, as well as methods of doing business as a branded hotel within the System, including marketing and guest loyalty/incentive programs. (*Id.* § 2(B).)

Licensee agreed in numerous places throughout the License Agreement that HHF would have wide latitude to control the aspects and requirements of the System. Such express consent to Licensor control is commonplace in any franchise system, particularly within the hospitality sector. It is essential for a franchise system involving thousands of franchisees with contracts extending for 10-20 years to maintain quality and consistent guest experience, and to be able to adapt to changing business and market conditions. This legitimate need for franchisor discretion includes the ability to alter or modify the System at any time in its sole judgment (*id.* § 1(B)); to require that Licensee must comply in all respects with HHF's changes to the System (*id.* § 3(A)(5), (10)); to require that Licensee incur the cost of making any changes to remain in compliance with the System (*id.* § 3(A)(10)); and to make Licensor's judgment in all matters involving the System shall be controlling in all respects (*id.* § 4(D)).

Licensee is attempting by this lawsuit to repudiate the bargain it reached with HHF. Licensee's scattershot allegations take issue with a variety of contractual rights and conduct on the part of IHG that are entirely consistent with its contractual rights to manage its hotel system in a manner that ensures quality and consistency for guests and protects its brand and the investments of other franchisees. Licensee complains that IHG requires property renovations and updates too

4

frequently, that property renovations are too costly, and that IHG imposes property inspection expenses on licensees. (Compl. ¶¶ 82-86, 95, 97.) It further objects to the License Agreement's requirement that Licensee use uniform System-approved products in their hotels, including telecommunications and wireless internet providers, notwithstanding that such standardization is obviously essential to consistent operations and product delivery in a hotel system. (*Id.* ¶¶ 71-76.) Licensee also takes issue with the design and operation of IHG's booking systems, marketing programs, guest loyalty programs, and allocation of advertising dollars. (*See, e.g.*, ¶¶ 21-26, 103-113, 119-129.)

Licensee asserts twelve purported breaches of contract against all Defendants (Count I), seeks a declaratory judgment that eleven aspects of the License Agreement are unconscionable (Count III), a single count against HHF for violation of the Sherman Act (Count IV), and requests an accounting of fees that it alleges should not have been paid to IHG (Count V). Licensee purports to assert these claims on behalf of a putative class of all licensees that have operated hotels under any HHF license in the State of Texas since January 1, 2014.

## **ARGUMENT**

### I.     **The Complaint should be dismissed because Plaintiff does not allege a proper basis for venue.**

As an initial matter, the Court should dismiss Licensee's Complaint under Rule 12(b)(3) for failure to plead or establish proper venue.  Inexplicably, Licensee's only alleged basis for venue in this district is the venue provision in the federal RICO states, 18 U.S.C. § 1965 (Compl. ¶ 39.) However, Licensee asserts no RICO claim in this action, and the Complaint lacks any allegations to establish a RICO violation.  Thus, Licensee's Complaint should be dismissed because Licensee shows no basis for venue in this district.

## II.    Legal standard applicable to motion to dismiss.

To survive a motion to dismiss under Rule 12(b)(6), a Complaint must allege sufficient factual matter, accepted as true, to state a plausible claim under applicable law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Licensee must allege sufficient ***facts*** to "provide the grounds for [its] entitlement to relief," and its claims based on those factual allegations must be more than "conceivable." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 566 U.S. at 678. Licensee must set forth "enough factual matter (taken as true) to suggest [each] required element" of each claim. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A complaint that fails to do so should be dismissed. *Twombly*, 550 U.S. at 570.

This same standard applies with particular force to the single antitrust claim against HHF. Where "[Licensee] fail[s] to identify any facts from which the court can infer" the elements of an antitrust claim, "the claim may properly be dismissed." *Endsley v. City of Chicago*, 230 F.3d 276, 282 (7th Cir. 2000) (affirming lower court's grant of motion to dismiss); *see Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3rd Cir. 1997) (no prohibition against dismissal of antitrust claims under Rule 12(b)(6)). Indeed, as the Supreme Court articulated in *Twombly*, limited court resources and the "costs of modern antitrust litigation" counsel against proceeding to discovery where there is no reasonable likelihood that the [Licensee] can construct a claim from the facts alleged in the complaint." 550 U.S. at 558. Courts in this Circuit dismiss antitrust claims where the allegations do not support an inference that plaintiff is entitled to a claim for relief. *Shah v. VHS San Antonio Partners, LLC*, 985 F.3d 450 (5th Cir. 2021); *Apani SW., Inc. v. Coca-Cola Enters., Inc.*, 300 F.2d 620 (5th Cir. 2002).

### III.    Georgia law governs the legal theories that Licensee attempts to assert, except those brought under federal law.

Licensee agreed in the License Agreement that "all disputes between the parties, whether sounding in contract, tort or otherwise, shall be governed and construed under, and in accordance with, the laws and decisions (except any conflict of law provisions) of the State of Georgia." (Agreement, § 14(B)(1).) [4] Thus, in resolving this Motion, the Court should apply Georgia law to all claims that Licensee attempts to assert, except those brought under federal law.

The parties' choice of law is binding here. Georgia law upholds such provisions "unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of the state." *CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Group, Inc.*, 283 Ga. 426, 428 (2008).[5] No such contrary public policy exists here. Courts have enforced similar terms in IHG's agreements in other cases, and this Court should do so here. *See, e.g.*, *Holiday Hospitality Franchising, LLC v. J&W Lodging, LLC*, No. 1:17-CV-01663-ELR, 2018 WL 11224379, at *5 (N.D. Ga. Feb. 8, 2018); *Generation Companies, LLC v. Holiday Hospitality Franchising, LLC*, No. 5:15-CV-220-FL, 2015 WL 7306448, at *5 (E.D.N.C. Nov. 19, 2015).

### IV.    Licensee fails to plead sufficient facts to satisfy the *Twombly/Iqbal* standard as to *any* cause of action in the Complaint.

This Court should dismiss Licensee's Complaint in its entirety because Licensee pleads ***no facts*** to bring any of its causes of action across the required plausibility threshold. The Complaint lacks any specifics regarding how these provisions were applied ***specifically to this Licensee***,

---

[4] Licensee also agreed that the License Agreement should be deemed to have been "made and entered into in the State of Georgia." (*Id.*)

[5] Georgia choice of law principles govern the enforceability of the parties' choice-of-law provision because, in light of the valid forum selection clause in the License Agreement and as explained in IHG's contemporaneously filed Motion to Transfer, the case should have been filed in a Georgia court at the outset. *Atlantic Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 64 (2013). Regardless, Texas law likewise would enforce the contractual choice of law. *Haynsworth v. The Corporation*, 121 F.3d 956–962 (5th Cir. 1997).

much less how they were applied in violation of the terms of the License Agreement. Just as one example, Licensee claims that IHG threatens licensees with termination and/or issues default notices based on "excessive and unfair" fees, but alleges no facts to explain whether **Licensee** has ever received a notice of default or termination and, if so, on what alleged improper fees those notices were based.

The same can be said for all of Licensee's conclusory and, in some instances, inflammatory theories. Licensee alleges **no facts** to show:

- That any particular IHG-approved products or vendors were "low-quality," as Licensee contends;

- That Licensee ever sought approval to use any alternative products or vendors under the process provided in the License Agreement;

- On what occasions, and how, IHG allegedly took "vindictive, punitive[, or] retaliatory" action against Licensee, or the circumstances of the alleged retaliation;

- How any aspect of IHG's property improvement program ("PIP") was applied to Licensee in any way that violated the License Agreement;

- How this Licensee has been adversely impacted by any marketing program, guest loyalty program, booking service, or other business management service implemented by IHG or how IHG's requirements with respect to those programs breached the License Agreement;

- How this Licensee's decision to enter into this License Agreement could have been the product of overreaching or unconscionability;

- Perhaps most egregiously, any specifics whatsoever supporting the baseless and conclusory allegations of discrimination in a section of the Common Factual Allegations entitled "IHG's Racial Discrimination Against Indian-American & South Asian-American Franchisees," which are not even made a part of **any cause of action** in the Complaint.[6]

By failing to describe any actual events, interactions, or communications between IHG and **this Licensee**, or any actual resulting harm **to this Licensee**, the Complaint should be dismissed

---

[6]Significantly, Licensee asserts **no claim** of discrimination under any applicable law. Even if Licensee were to assert such a claim, these conclusory and purely incendiary allegations are so deficient as to fail to state any discrimination claim as a matter of law.

for failure to satisfy Licensee's basic pleading obligation alone. But even if the Court finds the Complaint to be sufficient under *Twombly* and *Iqbal*, each of Licensee's purported causes of action fails as a matter of law for the reasons shown below.

## V.     Licensee's Count I asserts no viable breach-of-contract claim.

Licensee's Count I is nothing more than a collection of twelve disparate objections to IHG's operation of the System asserted as alleged breaches of the License Agreement, each of which fails as a matter of law. Most fail because the License Agreement expressly authorizes the business decisions and System-wide programs that Licensee complains of, and so these theories cannot assert a breach of contract as a matter of law. (Compl. ¶ 192(a)-(d), (h)-(i), and (k).) Of those claims, four are also barred by Georgia's voluntary payment doctrine, which precludes Licensee from attempting to recoup payments to IHG previously made under the License Agreement. (Compl. ¶ 192(a), (b), (c), & (h).) Licensee's remaining breach theories fail because Licensee does not identify any provision in the contract alleged to have been breached. (Compl. ¶ 192(e), (f), (g), (j), and (l).)

### A.     Paragraphs 192(a)-(d), (h)-(i), and (k) fail because the License Agreement expressly authorized IHG to undertake all the activities Licensee complains of.

Paragraphs 192(a)-(d), (h)-(i), and (k) all challenge IHG's business decisions concerning the implementation of various System-wide programs—property renovation initiatives, System-approved vendor selections, implementing reservation systems and customer loyalty programs, and allocating marketing resources to reduce costs to Licensees during a pandemic—which Licensee complains increased its cost of operating the hotel. But as shown below, the License Agreement terms expressly authorized IHG to take these actions and to make these System-wide business decisions, and required Licensee to comply with those decisions.

A plaintiff cannot state a claim for breach of contract when the agreement permits the very

conduct at issue. This is particularly true when franchisees attempt to assert breach claims to try to override franchisor conduct or decisions authorized by the franchise agreement. *See, e.g.*, *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327 (6th Cir. 2010) (holding that hotel licensee could not recover as a matter of law when license agreement authorized licensor to make the decisions complained of, even at an additional cost to licensee); *Back Bay Resorts SWF, LLC v. Holiday Hospitality Franchising, LLC*, No. 1:14-CV-02521-ELR, 2015 WL 1320060, at *6 (N.D. Ga. Nov. 19, 2015) (dismissing breach of contract claims involving similar License Agreement provisions because plaintiff franchisee failed to show that franchisor acted contrary to the plain terms of the agreement); *Pai v. DRX Urgent Care, LLC*, Nos. 13–4333 (JAP)(TJB), 13–3558(JAP)(LHG), 2014 WL 837158 (D.N.J. Mar. 4, 2014) (dismissing franchisees' breach of contract theories when franchise agreement authorized the very conduct franchisees complained of).

Relevant to each of these seven breach theories, the Agreement's plain language authorized IHG to "modify, alter, or delete elements of the System in its sole discretion from time to time." (Agreement, § 1.) The "System," as Licensee agreed, encompasses "all elements which are designed to identify [IHG] branded hotels…." (*Id.*) The Agreement further described elements of the System to include:

- Access to a reservation service operated in accordance with specifications established by Licensor from time to time;

- Marketing programs;

- Architectural works; and

- Specifications and policies for construction, furnishing, operation, appearance and service of the Hotel.

(*Id.* § 1.) The Agreement also expressly authorized IHG, in its sole business judgment, to establish and modify System standards and requirements to promote the uniformity and goodwill of the

System and brand family as a whole. (*Id.* §§ 4(D), 5(C), 14(N).)

The License Agreement expressly states that Licensee must comply with IHG's System as modified from time to time, and that Licensor will have "wide latitude" in making judgments regarding its System-wide standards. (*See, e.g.*, *id.* §§ 3(A)(5), 4(D) & (E).) Such provisions involving franchisor control and discretion are both commonplace and necessary for the uniform and successful operation of any franchise system. Licensee further acknowledged that "[f]uture investments may be required of Licensee under this License." (*Id.* § 1.) Licensee agreed to comply with all aspects of the System and standards, including periodic renovations to the hotel property, requirements to purchase products from approved IHG vendors, participation in reservation systems implemented by IHG, and participation in marketing and customer loyalty programs implemented by IHG.

Indeed, the Licensee Agreement expressly addresses—and permits—all aspects of the System and standards that Licensee now complains of, as shown below:

| Complaint Paragraph | Allegation | License Agreement Provision Authorizing IHG's Conduct |
|---|---|---|
| ¶ 192(a) | IHG exercises discretion to alter, modify, or revise its "Standards" or "System" and imposes costs of system changes on Licensee | Agreement §§ 1(B), 3(A)(10) |
| ¶ 192(b) | IHG exercises its discretion in operating its PIP program and imposes costs of required property improvements on Licensee | Agreement §§ 1(B), 14(L)(2)-(3), |
| ¶ 192(c) | IHG imposes fees and costs associated with required property inspections on Licensee | Agreement §§ 3(A)(12), 14(L)(3) |
| ¶ 192(d) | IHG requires Licensee to use System-approved products, including certain telecommunications and wireless services approved by IHG | Agreement §§ 1(B), 3(A)(6), 3(A)(7), 3(A)(8), 4(D) |
| ¶ 192(h) | IHG imposes marketing fees in | Agreement §§ 3(A)(7)(f), 3(A)(10) |

| | connection with the implementation and operation of system marketing programs | |
|---|---|---|
| ¶ 192(i) | IHG made the business decision to pause advertising efforts during the pandemic | Agreement § 4(G) |
| ¶ 192(k) | The design and implementation of IHG's customer rewards programs | Agreement §§ 3(A)(7)(f), 3(A)(10) |

Numerous courts over many years have upheld similar provisions granting discretion to the franchisor in the operation of a franchise system and dismissed breach of contract claims based on the franchisor's exercise of its contractually authorized discretion. *See, e.g., America's Favorite Chicken Co. v. Cajun Enters., Inc.*, 130 F.3d 180, 182 (5th Cir. 1997) (affirming dismissal of breach of contract claim alleging franchisor breached franchise agreement by failing to allocate funds to local market where agreement vested in franchisor discretion on where to commit advertising dollars); *Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1011 (S.D. Fla. 1992) (dismissing breach of contract claim concerning BKC's spending of advertising dollars when franchise agreement permits BKC discretion over advertising spending); *Huang v. Holiday Inns, Inc.*, 594 F. Supp. 352, 356 (C.D. Cal. 1984) ("[T]he language of the Agreement provides Holiday Inns with broad discretion and latitude to uphold the quality standards within the Holiday Inn system."). In a key case in the franchise context, the Sixth Circuit upheld a hotel franchisor's contractual discretion to modify the system and standards to implement new programs and the hotel franchisee's contractual obligation to participate in those programs and bear the costs. *See La Quinta Corp.*, 603 F.3d at 327. For the same reasons, this Court should dismiss Licensee's breach theories in Paragraphs 182(a)-(d), (h)-(i), and (k).

**B.    Georgia's voluntary payment doctrine bars the breach theories Licensee asserts in Paragraphs 192(a), (b), (c), and (h).**

Four of Licensee's breach theories seek to recoup various "costs and obligations" it posits were "undisclosed," "not contracted for," or "exorbitant." (*See* Compl. ¶ 192(a), (b), (c), & (h).)

Georgia's voluntary payment doctrine bars those theories as a matter of law. Georgia law presumes that payments are voluntary when made with full knowledge of all the facts and circumstances. *See* O.C.G.A. § 13-1-13. A plaintiff cannot later recoup such payments on the theory that the amount was excessive or not owing. *Watts v. Promina Gwinnett Health Sys., Inc.*, 242 Ga. App. 377, 380 (2000). Nor can the plaintiff recover on the theory that the payee was in breach of the contract. *Henson v. Columbus Bank & Trust Co.*, 144 Ga. App. 80, 82–83 (1977) ("[B]y his voluntary payment of the interest demanded by CB&T on a quarterly basis, as well as the voluntary payment of the entire indebtedness as demanded in May, 1975, [plaintiff] cannot demand the return of the interest based on upon an alleged breach of contract.").

To overcome this presumption, Licensee must plead specific facts showing that at the time of payment, material facts were not known, or that Licensee was justified in failing to ascertain the truth. *Pew v. One Buckhead Loop Condo. Ass'n., Inc.*, 305 Ga. App. 456, 460 (2010); *Liberty Nat'l Life Ins. Co. v. Radiotherapy of Ga., P.C.*, 252 Ga. App. 543, 547 (2001). Georgia law requires a court to dismiss a complaint that "allege[s] no facts from which any of these excuses [can] be found." *Cotton v. Med-Cor Health Info. Sols., Inc.*, 221 Ga. App. 609, 612 (1996).

Here, Licensee alleges no basis to assert a breach of contract claim for payments voluntarily made to IHG. Licensee fails to allege (nor could it) that it was unaware of the material facts regarding the terms of the License Agreement or the nature and amounts of the assessments at the time of payment. Licensee has not asserted any fraud or misplaced confidence, nor could it credibly do so. This Court can and should dismiss all breach theories barred by the voluntary payment doctrine. *See Kuchenmeister v. HealthPort Techs., LLC*, 735 F. App'x 794, 799 (11th Cir. 2018) (affirming dismissal of claims attempting to recover voluntary payments); *Putnam-Greene Fin. Corp. v. AT&T Corp.*, No. 3:19-cv-177-TCB, 2020 WL 1915276, at *3 (N.D. Ga. Apr. 4, 2020)

(dismissing claims attempting to recover voluntary payments); *Tiana Corp. v. Principal Comm. Funding, LLC*, No. 1:14-cv-938-SCJ, 2015 WL 11236552, at *4–5 (N.D. Ga. Mar. 5, 2015) (same); *Cotton*, 221 Ga. App. at 612 (same).

> **C.  Licensee's alleged pre-contractual *representations* cannot support a breach of contract claim as a matter of law.**

Paragraphs 192(e), (f), (g), (j), and (l) of Count I fail to state a viable breach of contract claim because they do not allege any breaches of the License Agreement at all. In those subparts, Licensee alleges that IHG made various ***misrepresentations*** or ***omissions*** regarding aspects of the System to induce Plaintiff to become a IHG licensee. But a breach of contract claim must be based on obligations ***found in the contract***. *See, e.g.*, *Back Bay Resorts SWF, LLC v. Holiday Hospitality Franchising, LLC*, No. 1:14-CV-02521-ELR, 2015 WL 13120060, at *5 (N.D. Ga. Nov. 19, 2015) (citing *Douglas v. McNabb Realty Co.*, 78 Ga. App. 845, 846 (1949)). It is fundamental that Licensee cannot state a breach of contract claim based on representations outside the contract. *See, e.g.*, *Pai v. DRX Urgent Care, LLC*, Nos. 13–4333 (JAP)(TJB), No. 13–3558(JAP)(LHG), 2014 WL 837158 (D.N.J. Mar. 4, 2014) (dismissing breach of contract theory premised on alleged misrepresentations in the franchisor's FDD that were not actually contained in or incorporated into the Franchise Agreement).

Paragraphs 192(e), (f), (g), (j), and (l) do not identify a provision ***contained in the contract*** alleged to have been breached. Therefore, these theories should be dismissed for failure to state a breach of contract claim as a matter of law. *Am. Casual Dining, L.P. v. Moe's Sw. Grill, LLC*, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) ("Because [plaintiff] cannot point to any contractual provision that [defendant] breached … [plaintiff] cannot state a claim for breach of contract based on these allegations."); *Anderson v. Deutsche Bank Nat. Trust Co.*, No. 1:11-cv-4091-TWT-ECS, 2012 WL 3756512, at *5 (N.D. Ga. Aug. 6, 2012) report and rec. adopted, No. 1:11-cv-4091-

TWT, 2012 WL 3756435 (N.D. Ga. Aug. 27, 2012) (dismissing breach of contract claim for failure to identify breached contract provision).[7]

## VI.   Licensee's Count III fails to meet Article III's case or controversy requirement and substantively fails to state a plausible claim for unconscionability under Georgia law.

In Count III, Licensee tries to rewrite the License Agreement on the theory that large portions of the License Agreement are unconscionable and should not be applied to Licensee as it continues to operate its IHG hotel. The Court should dismiss Licensee's attempt to rewrite the License Agreement because the Complaint alleges no actual controversy to support subject matter jurisdiction and, further, because Licensee cannot meet the high standard to show that any aspect of the License Agreement is unconscionable under Georgia law.

### A.   The Court lacks Article III jurisdiction over Licensee's declaratory judgment count because it does not allege a justiciable case or controversy.

The Court should dismiss Licensee's declaratory judgment count because it is purely abstract, and Licensee fails to show any concrete controversy as required to support this Court's subject matter jurisdiction. Article III of the United States Constitution limits this Court's authority to actual "cases" and "controversies." *A&M Gerber Chiropractic, LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019). Similarly, this Court may only hear disputes under the Declaratory Judgment Act where a "'definite and concrete' controversy exists." *Owners Ins. Co. v. Parsons*, 610 F. App'x 895, 896–97 (11th Cir. 2015); *see also* 28 U.S.C. § 2201 (authorizing

---

[7]Even if denominated as tort claims, these misrepresentation theories based on pre-contractual statements would still fail. Licensee agreed that the License Agreement constituted the "entire agreement between the parties pertaining to the licensing of the Hotel and supersede[d] all previous negotiations and agreements between the parties" other than statements in IHG's FDD. The merger clause bars any actionable fraud or negligent misrepresentation claim based on different or additional representations in connection with licensing the Hotel. *Am. Casual Dining,* 426 F. Supp. 2d at 1368 (citing *First Data POS, Inc. v. Willis*, 273 Ga. 792, 795 (2001)); s*ee also Savage v. KGE Assocs. Ltd. P'ship*, 260 Ga. App. 770, 776 (2003) (explaining that a merger clause precludes a contracting party from relying on an alleged misrepresentation not contained in the agreement). This Court should dismiss the theories without leave to amend because any attempt to replead them would be futile.

federal courts to enter relief under the Act in cases of "actual controversy"). "The controversy must be more than conjectural; the case must 'touch[] the legal relations of parties having adverse legal interests." *Atl. Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (citations omitted).

As the party invoking this Court's subject matter jurisdiction, Licensee bears the burden to show that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing same). This Court reviews a plaintiff's jurisdictional allegations under a Rule 12(b)(6) standard, meaning that Licensee must allege a ***plausible set of facts*** to support an actual controversy. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Here, Licensee alleges nothing more than its dissatisfaction with the terms of the bargain it voluntarily, and with full knowledge, entered into with IHG. It alleges ***no facts*** to establish an actual controversy for which the Court could fashion a remedy.

### 1. Licensee's generalized dissatisfaction with the License Agreement does not create a concrete dispute between these parties.

Licensee's declaratory judgment count fails because it does not allege any actual dispute between these parties beyond Licensee's general dissatisfaction with the License Agreement. Licensee does not show (as it must) that some set of events ***has already transpired*** between these litigants to tee up a concrete controversy about the rights and obligations of each party under the Agreement. *See Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 22 (3d Cir. 1985) (holding that a justiciable controversy exists when the plaintiff alleges that all the essential facts giving rise to the dispute have already occurred); *Simon v. World Omni Leasing, Inc.*, No. 91-0806-AH-M, 1992 WL 12659375 (S.D. Ala. Jul. 13, 1992) (same). Absent a concrete dispute between the parties,

rendering a declaratory judgment would be purely theoretical and advisory.

Licensee merely lodges abstract challenges to certain terms of the License Agreement devoid of any specific facts showing how those provisions have been applied to this Licensee or how any actual or threatened application of those terms would be unconscionable. IHG has not asserted any default by Licensee under the License Agreement or taken any steps to terminate or alter Licensee's rights under the Licensee Agreement. Licensee alleges no specific interactions or communications with IHG whatsoever to show that these parties have "adverse legal interests" sufficient to support a concrete dispute. *See Atl. Gas Light Co.*, 68 F.3d at 414 (citations omitted). Licensee merely seeks to rewrite the License Agreement, which, as shown below, is a remedy this Court cannot provide.

### 2. Rewriting the parties' agreement is not a remedy this Court can provide.

Licensee may not use the court system to obtain a new contract with IHG. Article III jurisdiction requires that the Court be able to fashion a remedy to redress a plaintiff's alleged harm. *Lujan*, 504 U.S. at 569–71 (requiring that the plaintiff's harm be redressable as part of the federal suit). But it is axiomatic that courts cannot rewrite contracts to make better agreements for the parties. *See, e.g.*, *L & E Corp. v. Days Inns of Am., Inc.*, 992 F.2d 55, 58 (4th Cir. 1993) ("It is the function of the court to construe the contract made by the parties, not to make a contract for them...").[8] This Court therefore must dismiss this Count because it cannot fashion the remedy that Licensee seeks.

---

[8]*See also Westerfield v. Quizno's Franchise Co.*, 527 F. Supp. 2d 840 (E.D. Wis. 2007), *holding clarified to address procedural issue by* No. 06-C-1210, 2008 WL 2512467 (E.D. Wis. Apr. 16, 2008) ("The rule is well established in Wisconsin, as in all states, that courts may not rewrite a clear and unambiguous contract, or use the mechanism of construction to review an unambiguous contract to relieve a party from any disadvantageous terms to which the party has agreed."); *Walnut Creek Pipe Distrib., Inc. v. Gates Rubber Co. Sales Div.*, 228 Cal. App. 2d 810 (1964) ("The courts cannot make better agreements for parties than they themselves have been satisfied to enter into or rewrite contracts because they operate harshly or inequitably.").

Under similar circumstances, other courts have dismissed declaratory judgment actions seeking to rewrite the parties' agreement because the court cannot grant that remedy. *See, e.g., Simon*, 1992 WL 12659375. As the *Simon* court explained, "[f]ashioning this sort of relief in the abstract would be a daunting task for … any court, and the inherent difficult in doing so ***demonstrates the wisdom of the case-or-controversy doctrines***." *Id.* at \*5 (emphasis added).[9] Thus, Licensee's declaratory judgment claim fails to meet the standards of Article III or the Declaratory Judgment Act and, therefore, should be dismissed.

### B. In any event, Licensee cannot meet the extremely high standard to state a plausible claim of unconscionability under Georgia law.

Separately, Licensee's declaratory judgment count fails because Licensee cannot meet the high standard to state a plausible unconscionability claim under Georgia law. To do so, Licensee must plausibly allege that its Agreement to operate a Holiday brand hotel was such as "no sane man acting under a delusion would make, and that no honest man would take advantage of." *R.L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 966 (1975). Licensee must establish both procedural and substantive unconscionability. *NEC Techs., Inc. v. Nelson,* 267 Ga. 390, 392 & n.6 (1996).[10] Thus, Licensee must show that both the ***process of making the contract*** and the ***contractual terms themselves*** were such that enforcement of the Agreement would trigger a "profound sense of injustice" to a "decent, fair-minded person[]." *See id.* at 396. Licensee's unconscionability claim

---

[9] On the other hand, a declaration of unconscionability ***without*** fashioning new contract terms would flout the purposes of the Declaratory Judgment Act by creating ***more uncertainty*** for these parties. A dispute is justiciable under the Declaratory Judgment Act only if it "admit[s] of specific relief ***through a decree of a conclusive character*** …." *Aetna Life Ins. Co. of Hartford v. Hawthorn*, 300 U.S. 227, 240–41 (1937) (emphasis added); *see also Owners Ins. Co.*, 610 F. App'x at 897 (quoting same). Declaring large portions of the Licensee Agreement unenforceable without rewriting the agreement would leave the parties in a distinctly ***inconclusive*** position as to the future operation of Licensee's hotel as a Holiday branded property.

[10] *Nec Technologies* involved a contract for the sale of goods and thus addressed the unconscionability doctrine set out in the UCC. A leading treatise on Georgia contract law notes, however, that there has been a "virtual merger of the common law and UCC doctrine of unconscionability in Georgia." Ga. Contracts Law & Litig. § 3:18.

fails on both elements.

        **1.**     **Licensee does not plausibly allege procedural unconscionability.**

Licensee's own allegations belie any procedural unconscionability, which requires that one party took "fraudulent advantage of another" in entering into the contract. *See Hall v. Wingate*, 159 Ga. 630 (1924). Licensee must plausibly plead that it suffered "oppression" from inequality in bargaining power and "surprise" resulting from hidden terms. *See Mullis v. Speight Seed Farms, Inc.*, 234 Ga. App. 27, 30 (1998). Courts have held in the hotel franchise context that a hotel franchisee asserting procedural unconscionability "must demonstrate that he ***had no viable alternatives***, or that he faced the possibility of being excluded from the hotel franchise business if he had refused." *Singh v. Choice Hotels Int'l, Inc.*, No. 3:07-CV-0378-D, 2007 WL 2012432, at *10 (N.D. Tex. Jul. 11, 2007) (citing *Choice Hotels Int'l, Inc. v. Chewl's Hospitality, Inc.*, 91 F. App'x 810 (4th Cir. 2003)) (emphasis added). Licensee cannot establish procedural unconscionability because it is a sophisticated business entity with significant assets to whom the contract terms were fully disclosed before signing the License Agreement.

Courts rarely find procedural unconscionability as between commercial parties. *See NML Cap. v. Republic of Argentina*, 621 F.3d 230, 238 (2d Cir. 2010) (noting a lack of authority under New York law finding "any agreement involving parties of like sophistication unenforceable on substantive unconscionability grounds"). Even when one commercial party claims lesser bargaining power, courts have dismissed unconscionability theories for failure to allege procedural unconscionability. *See Cobra Tactical, Inc. v. Payment Alliance Int'l Inc.*, 315 F. Supp. 3d 1342, 1351 (N.D. Ga. 2018) (dismissing unconscionability theory asserted by allegedly "mom and pop" merchant against large payment processing servers for failure to plead procedural unconscionability); *NAFRA Worldwide, LLC v. Home Depot U.S.A., Inc.*, No. 1:12-cv-2808-AT,

2013 WL 12098772, at *6–7 (N.D. Ga. Aug. 29, 2013) (dismissing unconscionability theory asserted by supplier against large home improvement retailer for failure to plausibly allege procedural unconscionability).

Courts treat franchised businesses no differently and routinely reject unconscionability claims asserted by franchisee business owners. As the Seventh Circuit has held in the franchise context, franchisee plaintiffs are "not vulnerable consumers or helpless workers, but rather business people who bought a franchise." *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838 (7th Cir. 1999); *accord Westerfield v. Quizno's Franchise Co.*, 527 F. Supp. 2d 840 (E.D. Wis. 2007) (dismissing under Rule 12(b)(6) an unconscionability claim asserted by owners of franchised restaurant businesses because owners could not allege any lack of sophistication or vulnerability to create procedural unconscionability).[11]

Significantly, Licensee pleads **no facts** that would meet Georgia's high standard for procedural unconscionability. Licensee's conclusory allegations that IHG exercised "vastly superior bargaining power" and offered potential licenses as "take-it-or-leave-it" contracts of adhesion cannot survive a Rule 12(b)(6) motion. *See NAFRA Worldwide, LLC*, 2013 WL 12098772, at *6 (rejecting plaintiff's "conclusory allegations on the procedural unconscionability factors from *Nelson*").

Licensee's theory also lacks plausibility in light of its own allegations. Licensee is a sophisticated and well-resourced business entity. It is the fee owner of a 3-story (72 room) high-value commercial real property asset. (Agreement, § 1(A) & Attachment A thereto.) Licensee had myriad other choices for how to operate its commercial property, including as an independent

---

[11]The *Westerfield* court subsequently clarified its holding on procedural grounds in *Westerfield v. Quizno's Franchise Co.*, No. 06-C-1210, 2008 WL 2512467 (E.D. Wis. Apr. 16, 2008), but did not alter its estimation of the franchisee plaintiffs' business sophistication.

hotel, as a hotel affiliated with one of IHG's competitor companies,[12] or as some other commercial enterprise. Instead, Licensee voluntarily chose to enter into a contract with HHF to operate the property in the Holiday System.

Courts have routinely rejected unconscionability claims in these circumstances. *See, e.g.*, *Jai Sai Baba LLC v. Choice Hotels Int'l Inc.*, No. 5:20-cv-02823, 2021 WL 1049994 (E.D. Pa. Mar. 19, 2021) (rejecting hotel owners' unconscionability theory under Rule 12(b)(6) because plaintiffs "were each business companies operating hotels" and were not "forced to brand their hotel properties with a Choice mark." );[13] *L & E Corp. v. Days Inns of Am., Inc.*, 992 F.2d 55, 59 (4th Cir. 1993) (holding that the "narrow doctrine" of unconscionability could not support refusal to enforce valid bargain because franchisor and franchisee parties were experienced in the hotel industry); *see also Wingate Inns Int'l v. P.G.S., LLC*, No. 09-cv-6198 (WHW), 2012 WL 3550764 (D.N.J. Aug. 16, 2012) (finding ownership of multi-million-dollar real estate asset dispositive of sophistication inquiry for procedural unconscionability asserted by a hospitality franchisee).

Nor can Licensee plausibly assert unfair surprise. It acknowledges that it received a copy of IHG's FDD before signing the License Agreement. (Agreement, § 1.) The content of franchise FDDs is regulated by the Federal Trade Commission. *See* 16 C.F.R. § 426.1, *et seq.* (the "FTC Rule"), and Licensee has not alleged (nor could it) that IHG failed to comply with the FTC Rule. Licensee makes no allegation of fraudulent inducement. Thus, Licensee cannot plausibly claim that it received inadequate disclosures or was "tricked" into signing the License Agreement. *See We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838 (7th Cir. 1999) (finding no unconscionability

---

[12]The Court may take judicial notice of household-name companies that offer hotel and motel franchise opportunities, such as Choice, Hilton, Hyatt, Marriott, or Wyndham (among others). Fed. R. Evid. 201(b)(2); *see also, e.g.*, *MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923, 933–34 (8th Cir. 2004) (holding that a district court may take judicial notice of facts about a company that are readily ascertainable from public corporate records).

[13]Licensee's counsel in this action represented plaintiffs in the *Jai Sai Baba LLC* case.

when terms of franchise were disclosed to franchisee); *Doctor's Assocs., Inc. v. Jabush*, 89 F.3d 109 (2d Cir. 1996) (finding that party invoking unconscionability "unquestionably received a Uniform Franchise Offering Circular [now the FDD] from [the franchisor] pursuant to the FTC Rule); *Siemer v. Quizno's Franchise Co.*, No. 07 C 2170, 2008 WL 904874 (N.D. Ill. Mar. 31, 2008) (granting motion to dismiss for lack of unfair surprise when plaintiffs had received franchise disclosures before signing the franchise agreement).[14] Licensee itself alleges, moreover, that many of the complained-of provisions are contained in the four corners of the License Agreement. It plainly cannot claim any unfair surprise. *Tiana Corp. v. Principal Comm. Funding, LLC*, No. 1:14-CV-00938-SCJ, 2015 WL 11236552, at *8 (N.D. Ga. Mar. 5, 2015) (finding no plausible claim of procedural unconscionability when governing loan document disclosed allegedly surprising term).

Dismissal without leave to amend the complaint is appropriate here, where the operative allegations and documents show that Licensee cannot establish unconscionability as a matter of law. *See CogniTest Corp. v. Riverside Pub. Co.*, 107 F.3d 493 (7th Cir. 1997) (refusing to permit amendment of complaint to re-plead unconscionability). The Court, therefore, should dismiss Licensee's declaratory judgment action and need not proceed to consider whether substantive unconscionability might exist. *See NEC Techs., Inc. v. Nelson*, 267 Ga. 390 (1996) (requiring both procedural and substantive unconscionability).

## 2.    Licensee also does not plausibly allege substantive unconscionability.

Even were the Court to consider substantive unconscionability, Licensee has not alleged (nor could it) that any aspect of its License Agreement with IHG is substantively unconscionable. To meet Georgia's high bar for unconscionability, Licensee must show that its Agreement was such as "no sane man acting under a delusion would make, and that no honest man would take

---

[14]Licensee's counsel in this action represented plaintiffs in the *Siemer* case.

advantage of." *R.L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 966 (1975). Licensee must establish that the terms of its bargain with IHG were completely unreasonable or served no legitimate purpose in light of the commercial needs of franchise businesses in the hospitality industry. *See NEC Techs., Inc.*, 267 Ga. at 392 (explaining that substantive unconscionability focuses "on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar policy concerns"); *R. L. Kimsey*, 233 Ga. at 965–66 (emphasizing that substantive unconscionability must be determined in light of the "commercial needs of the particular trade or case").

Nothing in the Complaint even approaches the high standard for substantive unconscionability under Georgia law. Unconscionability claims are particularly implausible in the franchise context, where federal law requires a franchisor like HFF to provide a FDD containing the proposed form of agreement and detailed explanation of the key relationship terms, and also requires the franchisor to wait 14 days after disclosure before signing the franchise to a binding agreement. Further, while Licensee objects to certain IHG programs, fee structures, and business decisions, Licensee has not alleged any specific facts to suggest that its bargain was commercially unreasonable or such that no sane hotel owner would make. Licensee merely takes issue with the degree of discretion and control afforded to IHG under the License Agreement to operate (and make changes to) the IHG System and standards. As explained above, though, Licensee knew of, independently investigated, and expressly agreed to those terms when it chose to enter into the License Agreement to operate a Holiday brand hotel.

Provisions in a long-term contract, like those complained of here, that provide discretion to a hotel licensor to control the operation of and modifications over time to its hotel system are entirely appropriate and consistent with the needs of the franchising business model for the

hospitality industry. Successful franchise businesses require "uniformity and consistency" of customer experience across brand locations. *See Queen City Pizza*, 124 F.3d at 433. In the hospitality industry, the guest's experience encompasses everything from the architecture and interior design of the hotel property, to the product selection in the guest rooms, to the hotel's participation in brand-wide customer loyalty programs. Franchisors like IHG foster uniformity and consistency by implementing and enforcing uniform brand standards across all individual franchisee unit owners. Courts have long acknowledged that it is the "uniformity of product and control of its quality and distribution which causes the public to turn to franchise stores for the product." *Susser v. Carvel Corp.*, 206 F. Supp. 636, 640 (S.D.N.Y. 1962); *accord Mumford v. GNC Franchising LLC*, 437 F. Supp. 2d 344, 350 (W.D. Pa. 2006) (same); *see also Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 408 (5th Cir. 2008) (quoting *Queen City Pizza*, 124 F.3d at 433).

Furthermore, Licensee recognized in the License Agreement the commercial need for IHG to retain control over the System. Licensee acknowledged that "[h]igh standards established by Licensor are the essence of the System," and that the System itself remained proprietary to IHG. (Agreement, §§ 1, 7.) IHG's "overriding responsibility" under the License Agreement is to "maintain and improve the standards, performance and facilities of the hotels using the [Holiday brand]." (*Id.* § 5(C).) These requirements are also appropriate because they benefit other licensees in the System. Licensee therefore cannot, as a matter of law, plausibly allege that IHG's discharge of its duty to exercise control over its System and standards is substantively unconscionable.

Licensee's unconscionability claims as to various termination, liquidated damages, and dispute resolution provisions in the License Agreement are equally baseless. These provisions are commonplace in the hospitality franchise context and cannot as a matter of law be unconscionable.

The License Agreement's termination provisions simply give IHG the right to end the franchise relationship if Licensee fails to comply with the terms of the License Agreement. (Agreement, § 12(B)-(C).) Courts have enforced IHG's termination rights and the liquidated damages provision in IHG's license agreement, and Licensee alleges no plausible basis to find them unconscionable here. *See, e.g.*, *Holiday Hospitality Franchising, LLC v. Morning Star Hotel Victorville 4, LLC*, No. 1:12-CV-3809-ODE, 2014 WL 11393569, at *9 (N.D. Ga. May 2, 2014) (enforcing termination of hotel licensee and application of liquidated damages provision); *Crown Series, LLC v. Holiday Hospitality Franchising, LLC*, 357 Ga. App. 523, 525–30 (2020) (upholding liquidated damages provision of IHG license agreement).

For these reasons, courts across the country routinely have enforced franchise agreements that afford significant discretion to the franchisor to control the franchise system and standards without any suggestion that such an arrangement approaches the unconscionable. *See, e.g.*, *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327 (6th Cir. 2010) (enforcing hotel licensor's contractual right to institute changes to the System and to require licensee to conform to new standards); *Burger King. Corp. v. E-Z Eating, 41 Corp.*, 572 F.3d 1306, 1313–14 (11th Cir. 2009) (affirming district court's enforcement of restaurant franchisor's discretion to make changes to standards and product offerings over time); *Layton v. AAMCO Transmissions, Inc.*, 717 F. Supp. 368, 372–73 (D. Md. 1989) (enforcing franchisor's right to change the terms of the franchise unilaterally); *Huang v. Holiday Inns, Inc.*, 594 F. Supp. 352 (C.D. Cal. 1984) (enforcing hotel licensor's contractual right to exercise broad discretion and latitude over quality standards for the IHG system). Thus, as a matter of law, Licensee cannot state a plausible claim that anything in the License Agreement is substantively unconscionable.

**VII.    The Court should dismiss Licensee's accounting request because Licensee's substantive theories all fail as a matter of law.**

Licensee's accounting action should be dismissed because Licensee has not pled a plausible claim for any amounts it is entitled to recover. An accounting action is an equitable claim that may be based on either "an express or an implied promise to pay." *Gordy Tire Co. v. Bulman*, 96 Ga. App. 739, 741 (1957). Here, Licensee alleges no facts to show that IHG breached any obligation in the Licensee Agreement and, thus, cannot establish any entitlement to recoup any amounts from IHG. As shown above, the License Agreement expressly authorized IHG to implement the programs and make the System-wide decisions that Licensee complains of. Licensee agreed in the License Agreement that it would bear the cost of new or modified programs that IHG would implement from time to time. Consequently, the Court should dismiss Licensee's derivative claim for an accounting along with its substantive legal theories.

**VIII.    Licensee's allegations do not plausibly allege an unlawful tying arrangement.[15]**

Licensee alleges that HHF committed a *per se* violation of Section 1 of the Sherman Act by tying the purchase "by franchisees of their franchises and their continued existence as franchisees, upon the purchase of Mandatory Products and Services from Approved Suppliers." (Compl. ¶ 227.)

Courts, however, have long recognized that approved purchasing and supplier arrangements are an essential and important aspect of the franchise business model. Absent certain extreme circumstances that are not present here, the law is well-established that these contractual obligations are not antitrust violations, but rather serve a legitimate and pro-competitive purpose.

---

[15]The pleading flaws in Count IV are well known to Licensee's lead counsel. The factual allegations are substantially identical to those in a complaint filed by counsel in 2007 against a franchisor of sandwich shops. The court in that case dismissed the antitrust cause of action for failure to state a claim. *Westerfield v. Quiznos Franchise Company*, LLC, 527 F. Supp. 2d 840, 858 (E.D. Wis. 2007).

*See, e.g., Queen City Pizza*, 124 F.3d at 441 (contract terms limiting the ability of franchisees to choose inputs and vendors reduces system costs and prevents franchisees from freeriding on the brand and causing reputational harm to franchisor's system).

Indeed, the Supreme Court has rejected "the application of a *per se* rule that all tying arrangements constitute antitrust violations," recognizing instead that many tying arrangements serve pro-competitive purposes and are fully consistent with competitive markets. *See Ill. Tool Works, Inc. v. Independent Ink, Inc.,* 547 U.S. 28, 34–37 (2006) (tracing evolution of tying jurisprudence from strong disapproval to recognition that tying arrangements often serve legitimate purposes). While the Supreme Court has not explicitly discarded the *per se* label from tying arrangements, its analysis recognizes that the distinguishing characteristic of an unlawful tying arrangement is the exploitation of coercive power in the tying product market. *See Jefferson Parish Hosp. Dist. No. 2 v Hyde*, 466 U.S. 2, 28–29 (1984). To establish a *per se* tying claim, Licensee must demonstrate: (1) the existence of a tying arrangement; (2) the tying product and the tied product are two separate products; (3) the defendant possesses "sufficient economic power" in the tying product market to "force" the buyer to purchase the tied product; and (4) involvement of a not insubstantial amount of interstate commerce in the tied product market. *Id* at 12–13.

The Complaint alleges, in the alternative, that the contractual obligations in the franchise license are an unlawful tie under the rule of reason. (Compl. ¶ 228.)  Where a defendant does not have market power in the tying market, the case can proceed under the rule of reason only if the plaintiff alleges facts sufficient to plausibly establish that the tying arrangement caused anticompetitive effects in the tied market.[16] *See Jefferson Parrish*, 466 U.S. at 29.

---

[16]Among the five Federal Circuits implicated by these copy-cat litigations (see Defendants' Motion to Transfer, filed concurrently with this Motion to Dismiss, August 27, 2021), the Fifth and Sixth Circuits may require proof that the arrangement resulted in an anticompetitive effect in the tied market as part of a *per se* claim. *See CTUnify, Inc. v. Nortel Networks, Inc.*, 115 F. App'x 831, 836 (6th Cir. 2004); *United Farmers Agents Ass'n v. Farmers Ins. Exch.*, 89

Although the conclusory allegations in the Complaint contains antitrust buzzwords, the factual conclusory allegations in the Complaint are deficient and do not sustain a plausible claim for relief under the Sherman Act. *See Iqbal,* 566 U.S. at 678.

### A. Licensee does not plausibly allege that HHF has market power in the proposed tying market.

A plaintiff asserting an unlawful tying agreement must properly define the relevant market within which the defendant's market power can be measured. *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F. 3d 1248, 1263 (11th Cir. 2015) (citation omitted). Licensee's allegations as to the relevant product market fall well short of the *Twombly* pleading standard. Having failed to properly define a relevant antitrust market, Licensee necessarily cannot allege facts sufficient to plausibly infer that HHF has market power in the alleged tying market. As market power is a necessary element of a *per se* unlawful tying arrangement, Licensee's antitrust tying claim fails as a matter of law. *See Ill. Tool Works,* 547 U.S. at 35 (a claimant must allege facts sufficient for a court to infer the seller's market power in the tying product).

### 1. Hospitality franchises is not a properly defined antitrust market.

A relevant market for antitrust purposes has two components: product and geographic. *Jacobs v Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010) The relevant product market identifies the products or services that compete with each other, and the relevant geographic market identifies the area in which competition for the relevant product takes place. *See Michigan*

---

F. 3d 233–35 (5th Cir. 1996). In the Third Circuit, a showing of anticompetitive effect in the tied market is necessary only under rule of reason analysis. *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 214 n.20 (3rd Cir. 2005). The Second Circuit and Eleventh Circuit - which would control under the choice of venue provision in the license - are split on the issue. *Compare E & L Consulting v. Doman Indus.*, 472 F.3d 23, 32 (2d Cir. 2006) *with In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133, n.5 (2d Cir. 2001) and *Commodore Plaza v. Saul J. Morgan Enters.*, 746 F.2d 671 (11th Cir. 1984) *with Amey Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1503 (1985) (anticompetitive effect is element only under rule of reason).

*Division-Monument Builders of N. Am. v. Michigan Cemetery Ass'n.*, 524 F.3d 726, 732–33 (6th Cir. 2008).

### a) Licensee fails to define the relevant product market.

A relevant product market is legally sufficient and can withstand a motion to dismiss only where the plaintiff defines its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly encompass all interchangeable substitute products. *See Brown Shoe Co. v. U.S.* 370 U.S. 294, 325 (1962). In determining whether products are reasonably interchangeable, "[a] court … looks ... to the uses to which the product is put by consumers in general." *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1221 (11th Cir. 2002) (quoting *Queen City Pizza,* 124 F.3d at 438). Absent factual allegations of cross-elasticity of demand, other indications of price sensitivity or any allegations regarding consumer behavior, the relevant market is legally insufficient and a motion to dismiss is appropriate. *See Jacobs*, 626 F.3d at 1338; *Queen City Pizza*, 124 F.3d at 436.

Here, the entirety of Licensee's efforts to define a relevant product market consists of a single conclusory statement: "there exists *markets* for ownership interests in hospitality franchises …." (Compl. ¶ 212.)  This allegation is woefully insufficient.

Even if a court could infer from the entirety of the Complaint *what* types of franchises (*e.g.*, restaurant, hotel, resort) Licensee includes within its proposed "hospitality franchises" market, the Complaint lacks *any* allegations referencing cross-elasticity of demand or the reasonable interchangeability of other investment and franchise opportunities to explain how Licensee defined the product market, *i.e.*, why it includes or excludes products. In reviewing the same set of allegations in relation to a different proposed relevant product market, the court in *Westerfield*

29

called the proposed relevant market "absurd" because there were no allegations referencing reasonably interchangeable products such as alternative business endeavors available to the plaintiff franchisees. 527 F. Supp. at 857 In *Arnold v. Petland*, the court found that the proposed relevant market of "retail pet franchises" failed to consider the purpose of the franchise to the franchisee. "It is, in the final analysis, an investment opportunity. Any other of a number of other products created for the same purpose would be reasonably interchangeable." No. 2:07-cv-01307, 2009 WL 816327, at *7 (S.D. Ohio 2009) (relying on *Queen City Pizza*, 124 F.3d. at 441). In other words, if the obligations of the proposed franchise agreement were too burdensome, Plaintiff could have pursued a different business opportunity. *Id*. Here, Licensee's allegations confirm that its decision to enter into the License Agreement was an investment ***choice*** and other investment opportunities should be included in the relevant product market in which to consider HHF's market power. "The Hotel franchise industry holds particular appeal … by providing an investment opportunity and traditional family business ownership opportunity." (Compl. ¶ 10.)

Having failed to include allegations regarding the cross-elasticity of demand for reasonably interchangeable alternative franchise or business opportunities, Licensee has failed to plead a plausible relevant product market. Licensee's claim should be dismissed pursuant to Rule 12(b)(6).

### b)     *Licensee fails to define the relevant geographic markets.*

A relevant geographic market is the geographic area of effective competition, including firms that would enter in the event of a price increase. *See, e.g., Standard Oil Co. v. United States,* 337 U.S. 293, 299 n.5 (1949). Courts have dismissed antitrust tying claims where the relevant geographic markets were either ill-defined or not supported by factual allegations. In *Sidibe v. Sutter Health,* for example, the court dismissed tying claims alleging that the relevant geographic markets for hospital services were "local" because (1) the complaint failed to identify several

geographic markets, and (2) to the extent that the complaint did identify a market, it failed to provide "factual support for drawing boundaries at the county lines." 4 F. Supp. 3d at 1175. The court in *Clark Memorials of Alabama Inc. v. SCI Alabama Funeral Services LLC* similarly held that where the complaint contained no "facts regarding consumer behavior" the geographic market in burial lots was not plausibly alleged. 991 F. Supp. 2d 1151, 1161–62 (N.D. Ala. 2014)*.*

Here, Licensee does not allege a geographic market so the claim should be dismissed. *See Philips Elecs. N. Am. Corp. v. BC Tech., Inc.*, No. 08-639, 2009 WL 2381333, at *1 (D. Utah Aug. 3, 2009) (dismissing tying claim where there was "no factually supported definition or description of what the relevant product or geographic market is").

> ## 2.   Licensee's solitary market power allegation is conclusory and insufficient.

Market power is the essential element of a *per se* claim for unlawful tying. As discussed above, Licensee fails to allege a plausible relevant antitrust market. Without a product market in which to assess HHF's market power, Licensee's *per se* tying claim fails as a matter of law. *Jefferson Parish*, 466 U.S. at 12 (holding that coercive forcing is "essential characteristic of an invalid tying arrangement").

Even if Licensee pled a legally sufficient relevant market, its allegation that "HHF had monopoly power, market power, and/or economic power in the relevant Hospitality Franchise market …" is conclusory and is not supported by any other allegations in the Complaint. (Compl. ¶ 221.)  No market share statistics are given, and there is no information in the complaint that would enable shares to be calculated. *See, e.g., Eastman Kodak v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 (1992) (market power "ordinarily is inferred from the seller's possession of a predominant share of the market"). The market power allegations in the Complaint fall far short of what is required under *Iqbal* and *Twombly*. "[P]laintiffs' naked assertion of [defendant's]

'appreciable economic power'—an empty phrase—cannot save the complaint." *Sheridan v. Marathon Petroleum Co. LLC*, 530 F.3d 590, 595 (7th Cir. 2008) (holding that complaint failed to allege market power where no market shares statistics are alleged and there is no information in the complaint from which shares could be calculated).

Neither can Licensee point to the restrictions in the License Agreement as proof that HHF enjoys market power in the tying market. Whatever restrictions HHF imposes on the products and services that Licensee can purchase and use are the result of the ***contract*** and were known and agreed to by Licensee when it signed the License Agreement.[17]

Courts consistently "have declined to equate contract power with market power ...." *McLaughlin Equip. Co. v. Servass*, No. P98–0127–C–T/K, 2004 WL 1629603, at *19–20 (S.D. Ind. Feb. 18, 2004) (observing that the "fact that a defendant or manufacturer … has the power over its distributor by virtue of the distributorship" is irrelevant to the analysis of market power). As a matter of law, "[e]conomic power derived from contractual agreements such as franchises … has nothing to do with market power, ultimate consumer welfare, or antitrust." *United Farmers Agent Ass'n v. Farmers Ins. Exch.*, 89 F.3d 233, 236–37 (5th Cir. 1996) (citations omitted) (affirming dismissal of a tying claim based on an insurer's requirement that its agents purchase a

---

[17]The Complaint contains several allegations that Licensee faces information and switching costs that "lock them in" to their positions as HHF franchisees, making it economically impracticable for them to leave the HHF system. (Compl. ¶¶ 156, 219, 220, 222, 223.)  Typically, such allegations are made by plaintiffs as a basis to assert that the relevant market in which to consider "market power" is not the overall market for investment or franchise opportunities but rather a market that consists only of the defendant's franchise brand. Plaintiff does not connect those dots in this Complaint and therefore the issue is not addressed in the main portion of this brief. Nevertheless, there is no support in the case law for this argument where a plaintiff, as is the case here, was fully informed ***prior to executing the franchise license agreement*** of the obligations it was undertaking as a franchisee, including the ability of franchisor to mandate the purchase of certain products from specified vendors. *See, e.g., Wilson v. Mobil Oil Corp.*, 984 F. Supp. 450, 460–61 (E.D. La. 1997) (court found that plaintiff "had sufficient information to evaluate the [] franchise opportunity before they 'locked-in' to the franchise" and held in part that "arguments about information costs and switching costs are inapposite in the franchise context if there is advance disclosure of the tying arrangement"); *cf. Burda v Wendy's Int'l, Inc.*, 659 F. Supp. 2d 928, 935 (S.D. Ohio 2009) (assertion of antitrust claim under lock-in theory requires that allegations in the complaint that defendant changed its rules after entering into the contract or concealed its rules at time of contracting). Licensee makes no such allegations here.

particular computer system). Indeed, as the court in *McLaughlin* observed, if contractual restrictions agreed to by a distributor could from the basis for a finding of market power, "scores of lawful business arrangements and agreements would become violations of antitrust laws. 2004 WL 1629603, at *20. The purpose of the Sherman Act, however:

> is not to protect businesses from the working for the market, it is to protect the public from the failure of the market." *Spectrum Sports, Inc., v. McQuillan*, 506 U.S. 447, 458 (1993). Here, Licensee's "acceptance of a franchise package that included purchase requirements and contractual restrictions is consistent with the existence of a competitive market in which franchises are [evaluated by potential franchisees] in part according to the terms of the proposed franchise agreement and the availability of alternative franchise opportunities. Plaintiffs need not have become [HHF] franchisees. If the contractual restrictions in [the License Agreement] were viewed as overly burdensome or risky ***at the time they were proposed***, [Licensee] could have purchased a different [franchise], or made some alternative investment. They chose not to do so.

*Queen City Pizza*, 124 F.3d at 441 (emphasis added).

Because Licensee has not alleged any facts from which a court could infer that HHF has market power in the alleged relevant market, Licensee fails to allege a necessary element of a *per se* tying arrangement and this claim should be dismissed.

**B.     Licensee's rule of reason claim also fails because the allegations do not plausibly infer that the tying arrangement caused any anticompetitive effects in the tied market.**

Because Licensee has failed to allege facts that show a plausible entitlement to relief under the Supreme Court's *per se* analysis, Licensee must allege facts sufficient to support a plausible inference that HHF's conduct caused an adverse effect on competition in the market for the tied product to sustain a claim under the rule of reason. *See Jefferson Parrish*, 466 U.S. at 29; *see also McLaughlin Equip. Co.*, 2004 WL 1629603, at *25 (there must an "adverse effect in the tied market in terms of output or price").

Here, Licensee alleges that the tied product market is "the related goods and services associated with the operations of hospitality franchises, including but not limited to services,

software, physical furnishings, financial services, and food products (the 'Mandatory Products and Services')." (Compl. ¶ 213.) The Complaint alleges that the tying arrangement resulted in the following anticompetitive effects: supra-competitive prices on franchises; impeded the ability of other vendors to engage in competition with Approved Suppliers to provide Mandatory Products and Services; and consumers "indirectly" paying the rebates and higher prices of the Mandatory Products and Services. (Compl. ¶ 225, 226, 228.)

As a threshold issue, some of the items in the basket of goods and services may not actually be distinguishable from the franchise itself, *e.g.*, software systems designed specifically for use in the HHF system. Where there is no demand for a product independent of the demand for the franchise, the plaintiff cannot satisfy the two-product requirement of a tying claim *See Subsolutions Inc. v Doctor's Assoc. Inc.*, 436 F. Supp. 2d 348, 355 (D. Conn. 2006) (point of sale system designed for use in defendant's franchise locations was not a separate product from the franchise).

In any event, the infirmities that plague Licensee's tying product market definition doom the tied product market definition, including Licensee's failure to define the market in terms of reasonable interchangeability or elasticity of demand among consumers generally of these products. *See* supra at VIII(A). The Complaint contains no allegations as to whether **other** users of the various products within the basket of Mandatory Products and Services consider them to be part of the same basket of goods. The boundaries of a market are not determined by the contractual restraints assumed by a particular plaintiff, "but by the uses to which the products are put by consumers of them in general." *See Mumford v. GNC Franchising, LLC*, 437 F. Supp. 2d 344, 354 (W.D. Pa. 2006). The failure to properly define the tied market prevents this Court from plausibly

inferring harm to competition in that market since there is no market within which to measure the harm.

Further, the mere assertion that franchisees have paid higher prices for Mandatory Products and Services is "legally insufficient" to support the element of anticompetitive effect in the tied market. *Chawla v. Shell Oil Co.*, 75 F. Supp. 2d 626, 641 (S.D. Tex. 1999). Licensee "must allege, not only an injury to himself, but an injury to the market as well." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Licensee has not done that. Moreover, Licensee's allegation that absent HHF's policies it could obtain ***some*** of the Mandatory Products and Services at lower cost (Compl.¶ 73, 74, 76, 228) "have the unintended consequence of demonstrating that the markets for ... [the tied services] have not been affected." *Chawla*, 75 F. Supp. 2d at 641–42. Such allegations instead indicate that there is competition for the products that make up Licensee's proposed tied market, and that disfavored vendors have not been shut out of the relevant market because the market outside the contract remains competitive. *Mumford,* 437 F. Supp. 2d at 354 (*citing* Phillip E. Areeda & Herbert Hovenkamp, IIA Antitrust Law 149 (2002)). Finally, Licensee offers no factual support for the conclusory allegation that "consumers have indirectly" been injured by the restrictions within HHF's franchise license. (Compl. ¶ 228.)

Licensee has not sufficiently alleged that HHF's purchasing restrictions have led to a reduction in output or an increase in prices across the products in the overall tied market of Mandatory Products and Services generally. Licensee therefore has failed to plead allegations that show a plausible entitlement to relief under the rule of reason.

**C.     Licensee's antitrust claim is barred by the statute of limitations.**

Claims brought pursuant to 15 U.S.C. § 1 are barred unless commenced within four years after the cause of action accrued. Because Licensee's claim is that certain provisions in the license

agreement are unlawful, the cause of action first accrued at the time the agreement was signed. *See Burda*, 659 F. Supp. 2d at 939 n.4 (*citing Susser v. Carvel Corp.*, 206 F. Supp. 636, 651–52 (S.D.N.Y. 1962)). The parties executed the License Agreement more than four years prior to filing the Complaint. Licensee does not make any factual allegations of actual harm as opposed to generalized, conclusory statements. The Complaint contains no allegations that HHF has taken any action against Licensee with regard to the restrictions in the License Agreement since the execution of the License. Consequently, Licensee's antitrust claim is barred by the statute of limitations.

## <u>CONCLUSION</u>

For the forgoing reasons, the IHG Defendants respectfully request that the Court dismiss all counts of the Complaint without leave to amend.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.


*/s/ Bobbie L. Stratton*
Bobbie L. Stratton
Texas Bar No. 24051394
Fed. I.D. No. 1037350
bstratton@bakerdonelson.com
1301 McKinney St., Suite 3700
Houston, Texas 77010
Phone: (713) 650-9700
Fax: (713) 650-9701

Katherine I. Funk (*pro hac vice* forthcoming*)*
901 K Street NW
Suite 900
Washington, DC 20001
Telephone: (202) 508-3492
kfunk@bakerdonelson.com

Ronald T. Coleman, Jr. (*pro hac vice* pending)
Georgia Bar No. 177655
rtc@phrd.com
Jared C. Miller (*pro hac vice* forthcoming)
Georgia Bar No. 142219
jcm@phrd.com
Anne Horn Baroody (*pro hac vice* pending)
Georgia Bar No. 475569
abar@phrd.com
PARKER, HUDSON, RAINER & DOBBS, LLP
303 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30308
Telephone: (404) 523-5300

**ATTORNEYS FOR DEFENDANTS,
HOLIDAY HOSPITALITY
FRANCHISING, LLC, and SIX
CONTINENTS HOTELS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 27, 2021, a true and correct copy of the foregoing document was filed electronically via the Court's ECF system.  Notice was served to the following:

Cory S. Fein
**Cory Fein Law Firm**
712 Main St., Suite 800
Houston, TX 77002-3207
cory@coryfeinlaw.com

Andrew P. Bleiman (*pro hac vice*)
Mark Fishbein (*pro hac vice*)
**Marks & Klein, LLP**
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
andrew@marksklein.com
mark@ marksklein.com

Justin M. Klein (*pro hac vice* forthcoming)
**Marks & Klein, LLP**
63 Riverside Avenue
Red Bank, New Jersey 07701
justin@marksklein.com

Justin E. Proper (*pro hac vice* forthcoming)
**White and Williams, LLP**
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
properj@whiteandwilliams.com

*/s/ Bobbie L. Stratton*
Bobbie L. Stratton